The court will proceed to the sixth case, Thomas v. Burnham Trucking. Mr. Sinek. Thank you, Your Honor. May it please the court, my name is Mark Sinek. With me today is Mr. Matt Oberlin. Mr. Oberlin was instrumental in the preparation of the brief and I'd like to acknowledge his contribution at this time. Your Honor, we believe the district court erred in two fundamental components. The first is it concluded there was no duty because- Mr. Sinek, before we get into the merits, I have a question about subject matter jurisdiction. Yes, Your Honor. So far as I can see, Plaintiff Thomas is a citizen of Indiana. Burnham Trucking says that it's incorporated in Delaware. Yes. Thomas has asserted throughout this litigation that Burnham Trucking has only one employee located in Indiana. That would mean that Burnham Trucking's principal place of business is in Indiana and we therefore don't have complete diversity of citizenship. Burnham Trucking's brief asserts, but does not explain the assertion, that the principal place of business is in Illinois. And I have some difficulty with that. Where do you think its principal place of business is and why? I think it's in Indiana and I think it's there for the reasons you point out. And therefore there's no jurisdiction? I don't think there's jurisdiction. No subject matter jurisdiction? No subject matter jurisdiction. I will have to ask Ms. Wyler why she is asserting that the principal place of business of a I certainly look forward to hearing the response to that. If we turn back to the merits, I would say that again the district court error falls into two categories. One is that the court concluded there was no duty because the contract placed all responsibility for safety on PTO and that it concluded that Thomas was the borrowed servant of Burnham. The first issue really breaks down into two components, or at least the error breaks down into two components. The first is the court concluded that again all responsibility was in oversight for the drivers was with PTO and that was based on the terms of the contract, but that is not what the contract says. When we look at safety, the issues of safety on the contract provides that Burnham bears ultimate responsibility for compliance with essentially federal and state safety regulations and then it goes further and it exculpates PTO from these same responsibilities. It says that PTO under the Department of Transportation and Interstate Commerce Commission regulations has no duty for, no legal responsibility for driver's compliance with those. Certainly I think the term responsibility in each of those provisions of the contract is synonymous with the concept of duty and so while the district court concluded just looking at the contract that the duty lied with PTO, if we do look just at the contract, there is language from which a jury could conclude that duty lied with Burnham and there certainly in that context when the court makes that decision as to what duty, whether there is a duty, the court should have examined those provisions and concluded that that duty under the contract lied with PTO, but even if that is true, even if the district court is true in its conclusion that the contract provides that the duty for safety lies with PTO, the contract is not the final determiner of whether there is a duty on PTO. The mortgage consultant's case draws what I think is a very important distinction between contracts or claims that are based in contract and claims that are based in tort. If in fact this was a contract-based claim, the district court's analysis may have been correct, but as we're looking at the complaint and as we know from the allegations, this is a tort claim and under the mortgage consultant's case, the Indiana Supreme Court noted that when it is a tort or statutory claim, the inquiry does not end with the contract. It goes on to look at other factors, the contract being but one factor that the court should consider in assessing whether there was or was not a duty and then how far that duty goes. And the other factors that the court... Let me come back. I was a little surprised what you said about jurisdiction. Your brief affirmatively asserts that Burnham's principal place of business is in Illinois. Well, Your Honor... What is the basis for that assertion? The testimony of their employees or the testimony of their people. We have no independent... There's no testimony from anyone that their place of business... Then you should be questioning it, not repeating it to us. I understand that, Your Honor. We have a duty to check whether these representations are true, as does every lawyer. If, as you told me on your feet, you genuinely believe their principal place of business is in Indiana, you had an ethical duty to tell that to us, not hide it until oral argument. I don't believe that I did, Your Honor. Your brief asserts that their principal place of business is in Illinois. It doesn't say, this is contestable. We needed an evidentiary hearing. It just flatly asserts the principal place of business is in Illinois, period. Now you tell me at oral argument you don't believe what you represented to the court. That's a serious problem. Well, it's certainly not my intent in any way to misrepresent my position to the court. I think the issue of jurisdiction, we've certainly brought up in our docketing statement, and the court asked for a supplemental docketing statement to be filed on behalf of the defendant or the appellee. That was done, and those representations have been made, which are simply, so for me, there is simply a contested issue as to whether, where they are located. Your brief doesn't say that's a contested issue. Well, Your Honor, then that is my error in not being as clear in that brief as I needed to be on that particular point. But returning now to simply the issue of the contract. Again, the contract is not determinative in the issue of tort cases, and the other factors that the court should have examined in that context are the factors that are listed in the Hale case. And in that particular case, the court, the Indiana Supreme Court, lists seven factors as to whether the borrowed servant or the loan, or borrowed employee or loan servant doctrine would apply. And if the court had analyzed those, it is clear that there was a question of fact as to whether Mr. Bishop, Mr. Jackson, and Mr. Wharton were the loaned servants of Burnham. On the issue of the right to hire and fire, although the defendant or appellee takes the position that PTO had the authority to do that, what was clear from the testimony is that Burnham retained the right to notify PTO of employees that it no longer wished to work at the Burnham facility. Under GKN, the court found that that indirect ability to remove employees is tantamount to the right of discharge. And I would suggest that, in fact, when we look at the indirect right of discharge, there is also a similar indirect right of hiring. And we have evidence in this case that Burnham exercised its indirect right of hiring. Mr. Snell, I just want to remind you of the, you're into your rebuttal. I mean, it's your time, but you're into your rebuttal. So, I will simply then conclude by saying that if you look at the Hale factors, there was evidence on each one of them from which the court could have concluded that, in fact, there was a genuine issue of material fact as to whether they were or were not employees. On the last point about the court in the district court level concluded that Mr. Thomas was a, in fact, a borrowed servant of Burnham, that was never argued in the district court. And there is evidence that Mr. Thomas was not a borrowed servant of Burnham. But even if there was, that was a determination that the jury should have been permitted to make and was certainly not appropriate for summary judgment. I'll take the remaining 30 seconds on rebuttal. Thank you. Ms. Weiler. Good morning, Your Honors. Or early afternoon. May it please the court, my name is Catherine Weiler. I represent Burnham Trucking in this matter. Judge Easterbrook, I understand we want to immediately turn to your questions about subject matter jurisdiction. And I have to apologize to the court for not having brought certain of the documents from the record with me. But in response to the court's question about principal place of business and whether or not Burnham Trucking was a resident and citizen of Indiana at the relevant time, the, Burnham Trucking supplied a response pursuant to the court's order to the plaintiff's docketing statement and described... The response to the court order does not say why Burnham Trucking is representing that its principal place of business is in Illinois. It is... That's the question I'm asking. Why is it telling us that its principal place of business is in Illinois? Because Burnham Trucking is a subsidiary of ArcelorMittal. ArcelorMittal's corporate presence, offices, and corporate employees are all in Chicago, Illinois. And as we explain... And where is Burnham Trucking's principal place of business? Burnham Trucking is a subsidiary... Does it have any employees in Illinois? It has identified its principals and that is its... No, that was the problem. This began in state court. That's correct. It has two investors from Illinois, but that's not relevant. It would be relevant if it were a limited liability company, but it's a corporation. And so we need to know its principal place of business. Does it have any employees in Illinois? And... Sorry. Yeah, in Illinois. And I apologize to the court that I can't answer, if I may explain why, I can't answer whether these... Okay, I think we're going to need supplemental briefings. And that's what I was going to suggest. The Supreme Court established the governing rule in Hertz Corporation against Freed. It's 559 U.S. 77 in 2010. Corporate headquarters is the principal place of business. My question is, can a corporation have its headquarters in a place where it has no employees? And, Your Honor, I certainly appreciate the offer... That's a legal question that needs to be resolved separately from Hertz, because Hertz didn't deal with that. Hertz Corporation has got employees all over the world, but so far as anything in these only one state, and that's Indiana. And I appreciate and will certainly plan to file a supplemental brief pursuant to the court's instructions on dates for that. But if I could just add one thing to that, Your Honor, that is Hertz Trucking... Excuse me. Hertz talks about the nerve center of the corporation. And the reason I point the court to the Indiana business entity reports that were filed that we cite to in our response to the docketing statement, those discuss Burnham Trucking's corporate officers. So the president, the secretary, and the treasurer. Not the vice president, Ms. Murkison, who is the lone employee in Indiana, was the vice president. But the remaining officers are identified at that location at 1 South Dearborn. That's important here, and certainly we will address that further in supplemental briefing, because there were specific decisions being made about Burnham Trucking, both in terms of scope, what exactly Burnham Trucking will be used for, and... Look, I don't know where it is. What I know is that we need more information to know where it is, right? If it's got a person called a president, that's probably an employee, even if he gets no salary. But we need to know so that we can make this judgment. And the papers that we have suggest that no one has focused on this. And to the extent anybody paid any attention to it at the time of removal, the focus was, who were the investors, and not, where was the corporate headquarters? Understood, Your Honor. So we will certainly do that, and we will include both answers to the court's specific questions and the information about the documents that were filed as Indiana business entity reports. I'm happy to answer additional questions from the court on this point. Otherwise, I'll turn to the substance of the argument. Sounds like we'll be better off with paper later. Very good. Thank you, Your Honor. Turning to the substance of the plaintiff's argument, the district court's ruling should be affirmed. Burnham Trucking was entitled to summary judgment in this case because it owed the plaintiff no duty in this negligence action. Mr. Thomas's negligence claim is premised on the idea that although he was an employee of PTO, PTO had a contract with Burnham Trucking. Burnham Trucking provided certain equipment. Burnham knew or should have known that the equipment provided to Mr. Thomas was somehow inadequate or defective. And Burnham Trucking was allegedly negligent in failing to exercise reasonable care. The problem with those claims here is that as Mr. Thomas admits in his complaint, he was an employee of a different company, PTO. And PTO had a contract as an independent contractor with Burnham Trucking. That contract describes the specific rights and obligations and duties exchanged by those two entities. Under Indiana law, this is Hale v. R. Ardonnelly, not Hale, the case that discusses borrowed servant doctrine. Under Hale v. R. Ardonnelly, the Indiana courts have made clear a principal is not liable for the alleged negligence of an independent contractor. So on that basis alone, setting aside the further analysis that the plaintiff raises, on that basis, Burnham Trucking is not responsible for the injury suffered by a PTO employee. Unless there is an exception to that rule which applies. There are certain exceptions that are described, one of which concerns the contractual obligations between those parties. The contract in this case between PTO and Burnham identifies no obligation which would create a duty owed by Burnham Trucking under either general common law principles in Indiana or under the borrowed servant doctrine more specifically. The district court correctly analyzed those questions. And looking specifically at the language of the contract, it's clear that PTO and Burnham agreed any person employed by PTO would be deemed solely PTO's employee. That is specific language in the contract. And also that the relationship between PTO and Burnham shall, quote, in no event be construed to be that of principal and agent, master and servant, or employer and employee. Furthermore, pursuant to the contract, PTO agreed that it would, quote, have the sole responsibility for all aspects of the employment relationship, including but not limited to hiring, supervising, disciplining, and terminating employees, unquote. The testimony in this case established that, in fact, the parties and the parties who were deposed in this, or the individuals deposed in this matter, represented both PTO and Burnham, or, excuse me, represented PTO. The PTO witnesses in this case testified that they acted in accordance with that contract. Their conduct was completely consistent with that. That PTO was responsible for hiring employees, for disciplining employees, for providing them with safety training, and for providing them with the equipment they were required to use in the course of their employment. It was entirely consistent with that contract. And with that in mind, there also could have been no liability, no duty flowing from PTO to Burnham Trucking through the borrowed servant doctrine. The borrowed servant doctrine walks through seven different categories, seven different points to evaluate that are considered whether or not there could be some sort of a relationship, a duty that flows to the other employer, and they're not satisfied here. Plaintiff's counsel mentioned them. I'll run through them very quickly. The right to discharge an employee. Here, the testimony is clear that, although Burnham Trucking could make an observation about an employee, ultimately, PTO hired all employees, and that included walking through an employment application process, and through the process of testing employees. These were truck drivers. They had to demonstrate that they were capable of driving the machinery at issue here, and also that PTO was responsible for making employment decisions if they wanted to terminate an employee. Even though Burnham Trucking may have some sort of a comment, ability to comment on that, Burnham Trucking did not make those decisions. PTO did. There's no dispute about mode of payment. PTO paid its employees. There's no question here. The supplies, tools, and equipment were all supplied by PTO. PTO's director of safety made decisions about what materials to supply. Burnham paid for that equipment, but made no decisions about what to order. The party's belief about their relationship is demonstrated through the language of the contract, and there has been no disagreement from any of the PTO employees about the context of that agreement, or whether or not it was complied with. Who controls the means and methods? In this case, the testimony was clear. Means and methods of PTO employees doing their jobs was controlled by PTO management. The district court properly evaluated all of that, and determined that based on these factors, there was no duty owed to the plaintiff by Burnham Trucking. That ruling should be affirmed. If there are no further questions? I'm totally at sea in this case, because what I was looking at is workers' compensation. And it is not a workers' compensation, Your Honor. That's, frankly, part of the issue that Burnham Trucking had. Who paid for his injuries? Did anybody? I don't know that the plaintiff made a workers' compensation claim here. He obviously had serious injury. That's correct, Your Honor. He must have had lots of treatment, and maybe permanent injury. I don't know. I don't think the record is clear on that, but yes, Your Honor, it is a significant injury. Whatever it is, maybe it's old school, but I was confused here. I was always looking at this as everything is already completed if you have workers' compensation, and whatever injury in medical, et cetera, is covered. And that's the reason they have workers' compensation, because he takes away from the negligence issue. Now, we're still arguing about who employed him, and maybe nobody paid those things. I don't know. None of that, as I understand it, none of that is at issue, Your Honor. That is typically the context of a borrowed servant doctrine claim, is determining who's responsible for workers' compensation payments. That's not the claim here. The plaintiff, as best I can tell, now certainly Plaintiff's Counsel will speak to this. I don't know that the plaintiff has ever filed a claim under Workers' Compensation Act. He could certainly file one against PTO, because PTO is undisputedly his employer. Instead, the plaintiff here is seeking to recover from Burnham, and that's simply not something that Burnham has, excuse me, that Burnham would have an obligation to cover. In this case, there can be no negligence against Burnham directly. Ms. Weiler, before you sit down, I know you've engaged a little exchange with Judge Easterbrook about whether we need supplemental briefing, but I'm a little concerned about how much it's going to help us based on the assertions that have been made so far. As I understand it, you claim that the principal, current principal offices of Burnham are a block away from the courthouse. That's correct, Your Honor. Yeah. And is that what you're going to submit to us? That's correct. You're going to tell us that that's the current plan? That's correct, Your Honor. With the court's permission, if we file supplemental... What are you going to tell us? Who the names of these people are? Are you going to... I hope they're going to tell us whether they are employees of Burnham. Yes, exactly. I mean... Because I'm not aware of any case in which a principal place of business was found in a place where there were no employees. Right. Your Honor, what I intend to... I mean, I'm just considering what kind of fact inquiry... Maybe this should be done at the district court level. I'm just concerned that we have not been served well here on this issue. And we've spent time on merits which may or may not have been time well spent. But just what kind of representations do you intend to make if we allow supplemental briefing? As opposed to sending this back to the district court to find out, let facts lay out as they should. I intend to supply the court with the records that have been filed with the Indiana... I believe it's the Secretary of State in Indiana. I apologize if that's... The business licensing entity. I also intend to discuss with my client if I can obtain an affidavit from my client regarding employment. That's exactly what you were speaking to, Judge Easterbrook. I want to be able to identify... I can tell the court right now the names of the individuals who are identified as Burnham Trucking's principals. They're listed on Burnham Trucking's corporate application. But I want to be able... What does your website say where you're located? Burnham Trucking doesn't exist anymore. So I'd have to look at the archived website. It's been inactive since January 24th of 2017. Okay. Well, we'll issue the appropriate order. Go ahead. To say that one of the litigants doesn't exist is, of course, a problem. Who is the defendant? Burnham Trucking is inactive. I'm sorry. To the extent that I said they don't exist, that I certainly misspoke. My purpose in explaining that to you, Judge Flom, was simply to state in response to what's on their website, I don't know that Burnham Trucking has a website at this point because it is inactive. I will certainly look at that. That's something you probably need to address, too. This, I should think, would be a question of Delaware law. How long does Delaware give for the wrapping up of litigation? And who is actually the real party in interest at this point? Litigation is supposed to be brought and prosecuted in the name of the real party in interest. And to be clear, the change in status occurred in the middle of this litigation. I absolutely understand what you're saying. And then there should have been a motion to substitute the real party in interest. And I will certainly seek to address that question. In January of 17, Burnham changed its status with the Indiana Secretary of State, right? That's correct, yes, Your Honor. All right. Thank you. Seneca, do you have any? You have about 37 seconds there. I'll use them as effectively as I can. As to Judge Easterbrook's comments, I direct the Court to footnote number 2 in our brief in which we lay out what we believe to be the basis for the contention that Indiana is the location for Burnham. As to the comments about the contract, the problem with the contract is what was written was not what was done. It says that PTO is responsible for hiring, but in fact Burnham influenced those decisions and directed those decisions. It says PTO directed the employees. There's evidence that Ms. Merkelson gave them assignments, including developing the very safety program. Termination, they directed the termination of employees, and they paid for the equipment. So the point being, what is written is not what was done, and that creates the issue of fact that should have precluded some re-judgment. Thank you. Thanks to all counsel. The case is taken under advisement. Court will stand in recess. Thank you. Thank you.